# James Vlahakis

| | |
|---|---|
| **From:** | James Vlahakis |
| **Sent:** | Thursday, March 19, 2020 1:59 PM |
| **To:** | Weller, Jennifer; Schultz, David |
| **Subject:** | RE: Preston (Ellis) order Settlement email subject to FRE 408 |
| **Attachments:** | EVP, GC, CAO & Secretary ENCORE 0001084961-20-000039 .pdf |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

David and Jen:

This email is subject to FRE 408. For the reasons set forth below, MCM should give serious consideration to settling the pending lawsuits. As I'm sure you are aware, MCM's parent, Encore, took a huge tumble yesterday in the stock market. The executives who may rely on your good counsel recently sold off stock, but what they still hold lost a lot of value. The following are a few points that plaintiffs would like MCM to consider while you are tasked with coming up with a solution to save MCM hundreds of thousands of dollars in settlement costs and legal fees. As noted at the end of this email, the landscape has changed. Who would have imagined MCM losing close to 40% of its value in a single day?

**I. Here are a few talking points/areas of concern:**

1. I would like to start out by noting that plaintiffs do not believe that MCM is acting in good faith by attempting to push reassignment *before* we get to issue on which cases are *truly* subject to arbitration. MCM has months to track down the applicable cardholder agreements.

2. Further, MCM is putting the cart before the horse in terms of trying to get the cases resigned w/o having a plan for the next phase – which would involve moving to compel arbitration. There will be a lot of speculation and "maybes" from MCM in the transcripts. At the same time, what does MCM hope to gain moving to reassign 11 cases and then move to compel arbitration? If MCM can truly move to compel a majority of the cases, when why not do that now?

3. **How does MCM believe it can get around *Ramirez v. Midland Funding, LLC*?** Consistent with FRCP 1 and 11, is MCM moving to compel arbitration in the below cases based upon *an entirely different cardholder agreements* than the agreements that were at issue in *Ramirez v. Midland Funding, LLC*? In Ramirez, the accounts at issue contained a Utah choice of law provision precluded MCM from invoking arbitration as an assignee. In your below email you state that MCM intends to move to compel arbitration in the following cases:

   "Pursuant to Judge Ellis' order and with respect to the motion to reassign, MCM intends to move to compel arbitration in the following cases: ... all Giuliano cases, [and] Nash[.]"

   Here's what we all know is true relative to the following accounts:

   A. **Giuliano, Claudio I**
   Synchrony Bank ,
   Ashley Furniture Homestore card,
   Charge-Off Date, 01-18-2017;
   B. **Giuliano, Claudio II**
   Synchrony Bank,
   TJX card,
   Charge-Off Date, 12-23-2015;

1

    C. **Giuliano, Claudio III**
Synchrony Bank,
Sam S Club card,
Charge-Off Date, 6-21-2015;

    D. **Giuliano, Jennifer I**
Synchrony Bank,
Care Credit card,
Charge-Off Date, 12-25-2017;

    E. **Nash, Robert**
Synchrony Bank,
Amazon card,
Charge-Off Date, 09-12-2018.

Simply stated, how can MCM comply with Rule 11 where all of the accounts were issued by Synchrony Bank and the applicable cardholder agreements contain Utah choice of law provisions?

4. **Protecting Plaintiffs to ensure that MCM will not "change its mind" relative to arbitrating the above cases, if and when, reassignment takes place**. Right now, all I have MCM is your below email. I will object to reassignment, and possibly move to strike your motion as being inconsistent with FRCP 1 and 11 – if MCM won't go on the record before Judge Ellis (by way of a stipulation or some other form of a document) to state that it will move to compel arbitration in all of the above identified cases? To be very clear and "paper" this issue, I'm hoping to avoid a bait-and-switch of sorts where you say one thing to get the court to side with you (that nearly every case is subject to arbitration) and then change your tune once you get what you want (reassignment).

5. **Why is MCM is *not* moving to arbitrate the lowest number case, Preston I?** Consistent with FRCP 1, can you explain why is MCM *not moving to compel arbitration* in **Preston I** where the original creditor is Synchrony Bank and the cardholder agreements you sent me contains an arbitration clause. I presume that the Utah choice of law provision is the reason why. **Question**: Have you provided me with the proper cardholder agreement/terms and conditions for **Preston I**? The reason I am asking is that the cardholder agreement does not mention Sleepy's – the branded card at issue. Here is the relevant information:

    **Preston, Neal I**
Synchrony Bank,
Sleepy's card,
Charge-Off Date, 05-20-2016.

6. Please produce the applicable cardholder agreement and arbitration agreement for **Preston II** and **III**. The reason I am asking you to assist is because the account at issue does not appear to be branded to a specific credit card – and that makes it very difficult for me to locate the cardholder agreement and arbitration. Thank you in advance.

7. Consistent with FRCP 1 and FRCP 23(c) (1)(A), is MCM *willing* to concede that its "IMPORTANT INFORMATION ENCLOSED/ATTENTION REQUESTED" envelopes violate Section 1692f(8)? Or does MCM intend to litigate this issue? MCM's answers are important to how class reps may view reassignment and class settlement.

8. **What is MCM proposed game plan for the resolution of cases that MCM is not moving to compel arbitration?** For now, MCM will not be moving to arbitrate *Preston I* and *Castle*. What's your game plan for resolving *Preston I* and *Castle*? Having defended class actions for several years, I have a good idea of what MCM next moves will be – delaying the progress of the case, motion practice, boilerplate discovery answers. You have had some success in slowing down the *Pierre* case and settling other case after MCM has lost motions to dismiss or summary judgment motions. And I am confident that you've told MCM (and other OC for MCM) that you're best

suited to defend MCM because you* know me very well. Whether you've told MCM that we've worked side-by-side is immaterial in some ways and material in others.

And is it really that difficult for you to answer the complaints and say "this count was decided by *Preston*" or move to strike the allegations? Have you thought of a conciliatory approach to jointly working on cleaning up the pleadings and getting to issue? I have, and I and I can share my thoughts with you if you're willing to play fair.

MCM's Memo of Law goes a bridge too far where it complains that "Plaintiff's counsel's approach in continuing to file overlapping, confusing and redundant pleadings *should be curtailed* . . . ." Again, just because MCM thinks that something is "overlapping, confusing and redundant" does not mean that MCM's contention is accurate. Also, other than the reassignment rule, what other rule of law or rule of civil procedure are you relying on?

> *From my end, I'm not "tossing out theories to see what will stick". For example, I knew that that Mr. Preston would obtain reversal on Section 1692f(8) and that the result on appeal would be akin to "splitting the baby". Getting the CFPB to chime in was the result of an off-the-cuff remark relative to Judge Rover's line of questioning relative to whether MCM was engaging in visual overshadowing. While I was confident that the CFPB would support Mr. Preston's position, having the CFPB chime in was a double edged sword. It could have been problematic if the court placed too much reliance on what the CFPB said. But the court did not have to rely on what the CFPB said.
>
> Back to the elephant in the room and an the related double-edged sword. I do not know if you've told MCM that we worked together for years and it does not appear that other outside counsel (OC) for MCM know. But word on the street is that you've told OC for MCM that you know me well – just not why. To be clear, I have not told OC that I worked at Hinshaw. Having said that, when I was involved in an MDL proceeding, a wise attorney mentioned how an undisclosed double-edged sword was used by other attorneys to advance their position within the power struggle that takes place in most MDLs.

9. **Why MCM should consider settlement:**

   A. **Reason #1.** Your client took a beating today on the stock market yesterday.

   **Company:** Encore Capital Group
   **Ticker:** ECPG
   **Exchange:** NASDAQ
   **Last Trade:** $18.72
   **Change:** -11.83
   **% Change:** -38.72%
   **Volume:** 1,601,630
   **Day's High:** $29.33
   **Day's Low:** $17.77
   **Previous Close:** $30.55

   That being the case, it is very likely that it will be tightening its belt. I'm sure this will impact how much money MCM is willing to pay outside counsel to defend cases. What does that mean for OC and class counsel? There are two scenarios. MCM may prefer to fed its faithful lawyers – where the lawyers can keep the promises that they have made. MCM does not have a silver bullet to do away with the *Preston* decision. After yesterday's stock loss, I highly doubt that any similar company will play a war of attrition with a committed plaintiff's attorney and a group of class reps who have nothing to lose. Gone are the days of "we'd rather pay you than *that* attorney." Instead, a loss like today's will cause MCM to tighten its belt relative who it will pay in the future to defend it in pending and future suits.

3

B. **Judges have suggested/recommended settlement**. Dove-tailing from my last point, you would serve your client better by being more open to resolution and taking a more conciliatory approach to trying to figure out how best to resolve these cases. Maybe concede a point or *offer* to concede a point if I am willing to concede a point. Below is an example.

C. *Mace v. Van Ru* – "you win some, you lose some" I have read *Mace v. Van Ru* backwards and forwards. I know what some language helps plaintiffs and what may help MCM. But what of the soon-to-be-called "serial suits", if a majority are subject to arbitration as are currently willing contend. The so-called "serial suits" will disappear *if* you're right. That will leave MCM facing a handful of suits where the letters will likely state violations.

D. **Plaintiffs' Settlement Proposal**. $500k per class is a mere starting point. We are happy to settle in buckets and based upon the letter type and the envelope used. We are not in a position to make a case by case demand until we learn whether MCM will truly arbitrate and how many envelopes were mailed.

   Having said that, for **Preston 1**, on behalf of Mr. Preston, the proposed class can be resolved under the following terms:
   a. $[redacted] to the class for statutory damages for the currently defined class of "Illinois, Indiana and Wisconsin residents who received the subject Collection Letter and the Collection Envelope") and actual damages where payment was issued shortly after transmission of a letter inside the subject envelope;
   b. $[redacted] incentive award, debt-waiver and trade-line deletion;
   c. MCM agreeing to no longer used the envelope at issue;
   d. MCM agreeing to review the "renewal offer" safe-harbor as Judge Rovner suggested in her concurrence;
   e. An agreed motion to approve class settlement (and by agreement to resolve this case on a classwide basis, MCM funds notice*); and
   f. Reasonable attorney's fees and costs.

   **Bonnie Castle** is also prepared to settle:
   a. $[redacted] to the class for statutory damages for the currently defined class ("All persons with mailing addresses in the State of Illinois who were mailed a collection letter similar to the Collection Letter that was sent to Plaintiff where the original creditor was listed a Dressbarn branded credit card issued by Capital One, N.A. where the envelopes contained the words TIME SENSITIVE DOCUMENT") and actual damages where payment was issued shortly after transmission of a letter inside the subject envelope. We are open to enlarging the class to a Seventh Circuit based class;
   b. $[redacted] incentive award, debt-waiver and trade-line deletion);
   c. MCM agreeing to no longer used the envelope at issue;
   d. MCM agreeing to review the "renewal offer" safe-harbor as Judge Rovner suggested in her concurrence;
   e. MCM agreeing to modify its policies to immediately mail out collection letters;
   f. An agreed motion to approve class settlement (and by agreement to resolve this case on a classwide basis, MCM funds notice*); and
   g. Reasonable attorney's fees and costs.

E. **The ball is now in MCM's court**. Respectfully, I suggest that you go back to Gregory Call (GC) to prepare a class action counter settlement proposal. You are free to ignore plaintiffs, but the next few weeks, I will be in a position to show various judges that MCM is dragging its feet, "billing to bill" and otherwise not using judicial resources wisely. With what is going on in this country, judges are not going to be happy seeing anyone wasting time, hiding the ball and making busy work. MCM *violated* Section 1692f(8). MCM should be coming to the table rather than playing "hide the peanut."

> For the benefit of MCM and Encore shareholders, please return with a ROBUST settlement proposal and not a low-ball. Again, I saw how you treated counsel in *Pierre* with such disrespect and flat-out disdain at times in pleadings. That approach will only make me work harder.

> II.  **Final Thoughts**. To paraphrase Harrison Ford's famous comments to George Lucas, "just because you think you can say something does not mean you SHOULD say something." Moving forward, I suggest that we both have a moratorium on rhetoric. For example, I take issue how *your client* is trying to take the moral high ground by attacking me in its Memo of Law in Support of Reassignment where it argues "*Plaintiff's counsel* has attempted to splice up *his classes* and *needlessly multiply claims against* MCM." (Emphasis supplied). These are strong words from a defendant that was found to violate the law relative to Section 1692f(8). While it's possible that in-house counsel drafted that statement, given what was written, in *Pierre*, I have my doubts.

> MCM's Memo of Law also takes an unnecessary jab were it argues that "the pleadings are littered with irrelevant letter claims and redundancy and need to be streamlined in order to save the court substantial time." First, no one had a crystal ball when the cases were filed before the 7th Circuit ruled. Accordingly, contrary to what MCM said, nothing was "irrelevant" when the cases were filed because neither party knew how the 7th Circuit would rule.

In closing, I hope you and your families are healthy and that we can all get along in the next phases of this litigation. Have a good day,

-James


**From:** Weller, Jennifer <jweller@hinshawlaw.com>
**Sent:** Monday, March 16, 2020 6:31 PM
**To:** James Vlahakis <jvlahakis@sulaimanlaw.com>; Schultz, David <dschultz@hinshawlaw.com>
**Subject:** Preston (Ellis) order

Pursuant to Judge Ellis' order and with respect to the motion to reassign, MCM intends to move to compel arbitration in the following cases:

>   Preston II, III (Dow), all Giuliano cases, Nash, Ruyyashi (already filed) and Reynolds.


**Jennifer Weller**
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500, Chicago, IL, 60606
Tel: 312-704-3025 | Fax: 312-704-3001
jweller@hinshawlaw.com | hinshawlaw.com



*Please note our new address


Hinshaw & Culbertson LLP is an Illinois registered limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.