# James Vlahakis

| | |
|---|---|
| **From:** | James Vlahakis |
| **Sent:** | Wednesday, March 25, 2020 3:11 PM |
| **To:** | Weller, Jennifer |
| **Cc:** | Schultz, David |
| **Subject:** | RE: Preston (Ellis) order |
| **Attachments:** | Credit_Card_Agreement_for_Dressbarn_Cards.pdf; FW: Preston v. MCM- Judge Ellis |
| **Importance:** | High |

Thank you Jennifer:

I am following up on my March 19, 2020 email to you regarding settlement of **Preston v. MCM (Preston I)** and **Castle v. MCM**. I believe that MCM should strongly consider settlement of both cases where MCM has indicated that it will not seek to compel arbitration in these cases.

I am also writing to you pursuant to FRCP 1 relative to MCM's Motion to Reassign and in response your email where you indicated that MCM intended to pursue arbitration on a majority of the cases.

I. **Summary of Proposed Arbitration.**
Here is the running count of cases that you now contend are subject to arbitration. Please confirm if I am missing anything:

1. **Preston II & III** (original owner, Citibank, N.A., current owner, Midland Funding, LLC, servicer MCM); Consistent with FRCP 1 and FRCP 23(c)(1)(A), please provide ups with the cardholder agreement(s) that contain the purported arbitration agreements for Preston II and III.

2. **Giuliano, Claudio I** (original owner, Synchrony Bank , Ashley Furniture Homestore branded card, current owner, Midland Funding, LLC, servicer MCM);
3. **Giuliano, Claudio II** (original owner, Synchrony Bank, TJX branded card, current owner, Midland Funding, LLC, servicer MCM);
4. **Giuliano, Claudio III** (original owner, Synchrony Bank, Sam S Club branded card, current owner, Midland Funding, LLC, servicer MCM);
5. **Giuliano, Jennifer I** (original owner, Synchrony Bank, Care Credit branded card, current owner, Midland Funding, LLC, servicer MCM);
6. **Nash** (original creditor, Synchrony Bank, Amazon branded card, current owner, Midland Funding, LLC, servicer MCM); and
7. **Ruyyashi** (original owner, Comenity Capital Bank, Alpeaeon Cosmetics branded card, current owner and servicer MCM, and Utah choice of law provision).

- **Please note that all five (5) Synchrony Bank accounts appear to be governed by a Utah choice of law provision.**
- **The same is true relative to Ms. Ruyyahi's Comenity Capital Bank, Alpeaeon Cosmetics branded card.**

- Consistent with FRCP 1 and FRCP 23(c)(1)(A), please provide ups with the cardholder agreement(s) that contain the purported arbitration agreements.
- Question: Consistent with Rule 11, how is MCM going to move to compel arbitration in the above five (5) Synchrony Bank accounts and Ms. Ruyyahi's Comenity Capital Bank, given the fact that MCM lost a motion

1

to compel arbitration involving a set of Synchrony Bank cardholder agreements where the cardholder agreements were governed by Utah law. See, *Ramirez v. Midland Funding, LLC*? More on this case below.

8. **Giuliano, Jennifer II** (original owner, Comenity Bank, Dress Barn branded card, current owner, Midland Funding, LLC, servicer MCM); and
9. **Reynolds** (original owner, Credit One Bank, N.A., current owner, Midland Funding, LLC, servicer MCM).

- <u>Consistent with FRCP 1 and FRCP 23(c)(1)(A), lease provide ups with the cardholder agreement(s) that contain the purported arbitration agreements.</u>

## II. Preston I and Castle – Cardholder Agreements (please confirm)

Consistent with FRCP 1, please confirm that the attached document was the operative Credit Card Agreement for Mr. Preston. The reason I am asking is that I have been unable to locate a "Sleepy's" branded card on the CFPB's website. See, https://www.consumerfinance.gov/credit-cards/agreements/issuer/synchrony-bank/?page=1#ccagrsearch.

Similarly, please confirm that the attached document was the operative "Dress Barn" Credit Card Agreement for Ms. Castle.

## III. How Can MCM Enforce Arbitration Involving Synchrony Bank in Light of *Ramirez v. Midland Funding, LLC*?

Consistent with FRCP 1, I am asking you to explain how MCM intends to enforce arbitration on Synchrony Bank accounts in light of *Ramirez v. Midland Funding, LLC*, 2019 U.S. Dist. LEXIS 104038 (N.D. Ill. June 21, 2019). In *Ramirez*, Judge Alonso addressed MCM's collection of a debt originally owed to Synchrony Bank/Old Navy and ruled that MCM was unable to invoke arbitration as an assignee of Midland Funding, LLC under Utah law. According to *Ramirez*:

> Next, defendants argue that MCM, another nonsignatory, may enforce the arbitration clauses. Defendants argue MCM is "an assignee" of the account. Defendants, however, offer no evidence of an assignment to MCM. Plaintiffs allege in their complaint that, after Midland purchased plaintiffs' respective debts, Midland "retained MCM to assist with collection." (Am. Complt. ¶ 28/Docket 34 ¶ 28). Defendants admitted in their answer that Midland "purchased Plaintiffs' accounts and placed them with MCM for servicing." (Answer ¶ 28/Docket 57 at ¶28). This suggests, at best, an agency relationship between Midland and MCM.
>
> Under Utah law, "an agency relationship with a principal to a contract does not give the agent the authority to enforce a contractual term for the agent's own benefit." *Fericks v. Lucy Ann Soffe Trust*, 2004 UT 85, 100 P.3d 1200, 1206 (Utah S.Ct. 2004). Thus, under Utah law, an agent cannot enforce for its own benefit its principal's arbitration agreement. *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1297-98 (10th Cir. 2017) (holding nonsignatory defendants could not compel plaintiff to arbitrate under Utah law); *Taylor v. Advanced Call Center Technologies, LLC*, Case No. 17 C 1805, 2017 U.S. Dist. LEXIS 208888, 2017 WL 6988652 at *3 (N.D. Ill. Dec. 20, 2017) ("Utah Supreme Court precedent as interpreted by the Tenth Circuit makes clear that a nonsignatory's agency relationship with a principal does not authorize the agent to enforce a contractual term, such as an arbitration clause, for the agent's own benefit."); *Untershine v. Advanced Call Center Technologies, LLC*, Case No. 18-CV-77, 2018 U.S. Dist. LEXIS 101399, 2018 WL 3025074 at *8 (E.D. Wisc. June 18, 2018) ("[Defendant], as nonsignatory to the arbitration agreement, cannot compel [plaintiff] to arbitrate under agency theory."). Thus, MCM cannot enforce the arbitration clause in the agreements applicable to Avina, Gonzalez and Nieto.

*Ramirez*, 2019 U.S. Dist. LEXIS 104038, *14-*15.

**I am asking you to explain MCM's position before we dive into responding to the motion to reassign, and here's why:**

- If MCM cannot enforce arbitration relative the above Synchrony Bank accounts and Ms. Ruyyahi's Comenity Capital Bank account, MCM's reassignment motion does not have been brought in good faith where MCM argued that the cases could be disposesed of more effectively before one judge.

2

- Since MCM cannot honestly move to compel arbitration in relation to the five cases that have *Synchrony Bank* accounts and Ms. Ruyyahi's Comenity Capital Bank account,, MCM's Motion should be withdrawn and refiled.

## IV. Settlement Talks and Operation of Amended General Order 20-0012

MCM lost the *Preston* appeal to the extent that the 7th Circuit held that MCM violated Section 1692f(8). MCM has complained of the burdens of litigation. As noted above, it appears that MCM declined to advance a standing argument based upon your advice. At no time has MCM started a dialog relative to settlement.

Amended General Order 20-0012 may help assist the parties to discuss settlement of the cases on a class wide basis. While I recognize that MCM may be impacted by the Corona Virus, settlement may prove easier than MCM can imagine where (for now) one attorney is raising these claims in this district and outside of this district – and one firm (Hinshaw) has been tapped to lead MCM's defense. My point is that settlement discussions should be relatively simple, if both sides recognize one key issue: **neither side is going to get a home run**. Here are a few observations:

- MCM is not going to jam *all of the pending cases* into a single 500k cap.
- At the same time, I recognize what was said in *Mace v. Van Ru* in dicta relative the scenarios that were not before the 7th Circuit. Hypothetically speaking, I expect MCM to push back and argue that there should not be endless class actions, each with 500k caps.
- In the months since *Preston* was decided, MCM has failed to recognize is that (a) it is going to have to settle someday; and (b), that I have never drawn a line in the sand and said MCM must recognize that each case should provide each class with up to a 500k cap.
- Nowhere have I stated that MCM must "stipulate[e] that . . . that each of these cases is worth the statutory maximum damage cap of $500K." While MCM cites to Dkt. #17 in the *Castle* case, MCM failed to provide a pin-point citation to where I said that. The following is what I said:

    Plaintiff believes that Defendant should clearly explain what it hopes to get out of reassignment and whether Defendant will stipulate that is will not attempt to combine the cases to minimize its liability cap under the FDCPA in an attempt to ask a district court to ignore *Mace v. Van Ru Credit Corporation*, 109 F.3d 338, 341-44 (7th Cir. 1996) to set up a future appeal.

- Going forward, please refrain from similar misrepresentations to the various courts.
- Has MCM considered that Hinshaw could have caused the cases to be reassigned if Hinshaw had prefaced MCM's reassignment discussions with even short discussions relative to possible settlement? Simply state, Hinshaw's approach failed to include a carrot to entice Plaintiffs to agree with MCM's rather rote and cagey reassignment motion.
- I do not see how you could expect Plaintiffs to agree to consolidation where MCM has made zero effort to resolve a case of clear liability.

## V. Will MCM Argue that the "IMPORTANT INFORMATION ENCLOSED/ATTENTION REQUESTED" Envelope *Does Not* Violate Section 1692f(8)?

Will MCM concede that the "IMPORTANT INFORMATION ENCLOSED/ATTENTION REQUESTED" envelopes violate Section 1692f(8)? Or does MCM intend to litigate this issue?

MCM's answer to this issue may factor into whether we can agree to reassignment of these cases. Again, MCM can't expect to cajole Plaintiffs into agreeing to reassignment without dangling some form of a carrot.

-James

**From:** Weller, Jennifer <jweller@hinshawlaw.com>
**Sent:** Monday, March 16, 2020 6:31 PM
**To:** James Vlahakis <jvlahakis@sulaimanlaw.com>; Schultz, David <dschultz@hinshawlaw.com>
**Subject:** Preston (Ellis) order

Pursuant to Judge Ellis' order and with respect to the motion to reassign, MCM intends to move to compel arbitration in the following cases:

    Preston II, III (Dow), all Giuliano cases, Nash, Ruyyashi (already filed) and Reynolds.

**Jennifer Weller**
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500, Chicago, IL, 60606
Tel: 312-704-3025 | Fax: 312-704-3001
jweller@hinshawlaw.com | hinshawlaw.com



*Please note our new address

Hinshaw & Culbertson LLP is an Illinois registered limited liability partnership that has elected to be governed by the Illinois Uniform Partnership Act (1997).

The contents of this e-mail message and any attachments are intended solely for the addressee(s) named in this message. This communication is intended to be and to remain confidential and may be subject to applicable attorney/client and/or work product privileges. If you are not the intended recipient of this message, or if this message has been addressed to you in error, please immediately alert the sender by reply e-mail and then delete this message and its attachments. Do not deliver, distribute or copy this message and/or any attachments and if you are not the intended recipient, do not disclose the contents or take any action in reliance upon the information contained in this communication or any attachments.