**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| NEAL PRESTON, individually and on behalf of all others similarly situated, | Case No. 1:18-cv-01532 |
| Plaintiff, | Judge: Sara L. Ellis |
| v. | Magistrate Judge: Young B. Kim |
| Midland Credit Management, Inc., | |
| Defendant. | |

**PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT
AGAINST DEFENDANT MIDLAND CREDIT MGMT. INC.**

NOW COMES Plaintiff NEAL PRESTON, by his counsel, James C. Vlahakis, and moves to enforce a settlement agreement against Defendant Midland Credit Management, Inc. ("MCM") and in support states as follows:

**I. Introduction and History of this Putative Class Action**

1. Plaintiff Neal Preston ("Plaintiff" or "Mr. Preston") filed suit on March 1, 2018. The Complaint alleges that Defendant MCM violated Section 1692f(8) of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.* and when it mailed Plaintiff a collection letter inside of an envelope marked with the words "**TIME SENSITIVE DOCUMENT**". Dkt. 1, Count I, ¶¶41-42. Section 1692f(8) of the FDCPA prohibits debt collectors from "[u]sing any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram[.]"

2. On September 9, 2018, this Honorable Court granted MCM's 12(b)(6) Motion to Dismiss, holding (in relevant part) that the subject envelope did not violate Section 1692f(8) as a result of applying "benign language" exception to Section 1692f(8). Dkt. 26, pp. 1, 3-6. In relevant part, on January 21, 2020, the Seventh Circuit reversed, declining to apply the "benign language" exception and holding that the envelope

violated the prohibitions of Section 1692f(8). *Preston v. Midland Credit Mgmt.*, 948 F.3d 772, 776-77, 781, 783-84 (7th Cir. 2020).

3.    On March 3, 2020, MCM moved to reassign ten (10) putative class actions to the docket of Mr. Preston's case where the other putative class actions alleged violations of Section 1692f(8) of the FDCPA where MCM was seeking to collect credit card debts. See, Dkt. nos. 35-36. Plaintiff objected to MCM's Motion to Reassign on the grounds that MCM was not be honest with the court relative to its positions relative to how and when MCM intended to assert arbitration. Dkt. nos. 38, 40, 43. See also, **Exhibit A**, transcript of proceedings before this Court on March 4, 2020.

4.    On June 8, 2020, this Court granted MCM's Motion to Reassign and instructed Magistrate Young B. Kim to hold a settlement conference relative to the reassigned cases. Dkt. no. 46. By agreement of the parties, two additional cases were reassigned to this Court, *Nicole Giannini v. Midland Credit Mgmt, Inc.*, 20-cv-03208 and *Stacey Weathers v. Midland Credit Mgmt, Inc.*, 20-cv-04478. See Dkt. nos. 52, 60, 67 in the present case.

##    II.    Summary of Settlement Proceedings

5.    Magistrate Judge Kim and the parties participated in numerous settlement discussions.  *See* Dkt. nos. 48, 53, 56-57, 59, 62-64, 66, 68. On November 16, 2020, Judge Kim reported that the following ten (10) cases had been resolved by settlement:

> *Jennifer Giuliano v. Midland*, 19-cv-05434;
> *Jennifer Giuliano v. Midland*, 19-cv-05435;
> *Claudio Giuliano v. Midland*, 19-cv-05436;
> *Claudio Giuliano v. Midland*, 19-cv-05437;
> *Ruyyashi v. Midland*, 19-cv-06210;
> *Reynolds v. Midland*, 19-cv-7188;
> *Robert Nash v. Midland,* 19-cv-08077;
> *Claudio Giuliano v. Midland* 20-cv-00878;
> *Nicole Giannini v. Midland*, 20-cv-03208; and
> *Stacy Weathers v. Midland,* 20-cv-04478.

*See Preston* docket, no. 68.

2

6.      After the resolution of the above cases, settlement discussions continued relative to the resolution of Plaintiff's claims. Dkt. nos. 68-72, 76, 78.

7.      On or about January 21, 2021, the parties got caught up in a disagreement over whether Plaintiff's counsel would personally sign off on Paragraph 12 of the draft document that was drafted and submitted by counsel for MCM.

8.      Judge Kim suggested certain revisions to disputed Paragraph 12 in a simultaneous email to counsel for MCM and counsel for Mr. Preston. At Judge Kim's suggestion, Plaintiff's counsel submitted proposed edits to the proposed compromise language that was drafted by Judge Kim. The revisions that Plaintiff's counsel drafted in response to Judge Kim's first edit were accepted by counsel for MCM.

9.      For agreed to version of Paragraph 12 reads as follows:

> PLAINTIFF's attorney, James C. Vlahakis, agrees that as of January 29, 2021, he has not been retained by any individuals or entities, other than PLAINTIFF, and the husband and wife he first disclosed to MCM on January 8, 2021, that have or may have any potential claims, grievances, or causes of actions for violations of Section 1692f(8) of the FDCPA against MCM similar to the Section 1692f(8) claims asserted in the Lawsuit and resolved by this Agreement. Nothing in this paragraph shall be construed as a restriction of PLAINTIFF's attorney's right to practice in contravention of any applicable rules governing professional conduct.

10.      On January 30, 2021, Plaintiff's counsel replaced Paragraph 12 with the agreed to revised version, electronically signed the "CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS" (the "Agreement" or the "Preston Agreement") and emailed the e-signed Agreement to counsel for MCM (Judge Kim was carbon-copied):



11. A true and accurate copy of the Agreement signed by Plaintiff's counsel on January 30, 2021, is attached as Exhibit B in redacted form. Plaintiff's counsel has redacted the Agreement to avoid disclosing financial terms and certain injunctive relief.

12. After Plaintiff's counsel electronically signed the Agreement, counsel MCM did not object to any wording of the subject Agreement.

13. A separate draft settlement agreement was prepared by counsel for MCM to document the proposed settlement of the "couple" that was identified in Paragraph 12 of the Agreement. The couple signed separately settlement agreements that identified their specific MCM related account numbers.

14. Because the parties were unable to agree to the manner in which the various signature pages would be exchanged, at 12:54 p.m. on Friday, February 5, 2021, Judge Kim informed the parties that he was suggested an "exchange" of "settlement agreements" and in relevant part proposed the following exchange:

> . . . I will like Mr. Vlahakis to email the signed agreements from the couple just to me by 3:00 pm today. I will like Mr. Stelter to email me the signed Preston and Castle agreements just to me (I do understand that Mr. Preston and Ms. Castle must still sign the agreements) by 3:00 pm today. I will not communicate with either side and will not answer any questions about whether I have the agreements or whether they have been signed.
>
> Once I have all four agreements (Preston, Castle, Wife, and Husband), I will then attach them to a second email to both sides.
>
> ***
>
> If there are any concerns about what I included in this email, please let me know by 2:00 pm and please reply to all.

15. At 12:54 p.m. on Friday, February 5, 2021, the undersigned emailed Judge Kim the signed settlement agreements of the couple:



16.  Todd P. Stelter, counsel for MCM wrote to Judge Kim at 1:28 p.m. on Friday, February 5, 2021 and attempted to *unilaterally* alter the signature exchange procedure outlined by Judge Kim:



Fri 2/5/2021 1:28 PM
Stelter, Todd P. <tstelter@hinshawlaw.com>
RE: Settlement Agreements
To  Young Kim; Schultz, David; James Vlahakis; Weller, Jennifer
You replied to this message on 2/5/2021 1:43 PM.

We will forward signed Castle/Preston agreements to Judge Kim within 1 hour of confirmation from Judge Kim that the husband and wife have provided Judge Kim signed agreements that identify the husband & wife. Midland will not sign the Castle/Preston agreements without that confirmation.

Todd P. Stelter
Hinshaw & Culbertson LLP
151 North Franklin Street, Suite 2500, Chicago, IL 60606

17.  Judge Kim did not agree to allow counsel for MCM to unilaterally revise and/or renege on his proposed signature exchange procedure:



Fri 2/5/2021 2:20 PM
Young Kim <Young_B_Kim@ilnd.uscourts.gov>
Re: Settlement Agreements
To  Stelter, Todd P.
Cc  Schultz, David; James Vlahakis; jweller_hinshawlaw.com

Sorry. I'm sticking to my original plan. 3 pm is the deadline.

Young B. Kim
United States Magistrate Judge

18.  Plaintiff's counsel emailed Judge Kim a photograph of Mr. Preston's ink-based signature page at 2:36 p.m. on February 3, 2021:



19. At 3:02 p.m., Judge Kim issued a minute order terminating his referral of this matter for the purposes of conducting a settlement conference. *See* Dkt. no. 79 ("Parties are not able to resolve the matter at this time. This court has exhausted its efforts to assist the parties. All matters relating to the referral of this action having been

7

concluded, the referral is closed and the case is returned to the assigned District Judge.").

20. Prior to Judge Kim terminating his referral, Mr. Preston and his counsel had complied with the express terms of the Agreement as a result of signing their names to the Agreement. Mr. Preston and the undersigned also complied with the terms of Judge Kim's proposed "exchange" of signed releases relative to Mr. Preston's Agreement because the undersigned transmitted his signature to Judge Kim on January 30, 2021, and the undersigned transmitted Mr. Preston's ink-based signature to Judge Kim prior to 3:00 p.m. on February 5, 2021.

21. With *any* justification, MCM did not comply with Judge Kim's proposed "exchange" because counsel for MCM refused to provide Judge Kim with MCM's signature to Mr. Preston's Agreement prior to 3:00 p.m. on February 5, 2021. In fact, counsel for MCM has yet to produce MCM's signature to Mr. Preston's Agreement.

22. As set forth below, MCM is material breach of the Preston Agreement because it has refused to sign it, despite Judge Kim's reasonable proposal governing the "exchange" of signature pages. Despite repeated requests, MCM and its counsel have refused to sign the Preston Agreement.

### III. Standard of Review

23. This court has "inherent authority" to enforce a settlement agreement that resolves claims pending before it. *Sims-Madison v. Inland Paperboard & Packaging, Inc.*, 379 F.3d 445, 449 (7th Cir. 2004). In determining whether parties have reached an enforceable settlement agreement, a court is required to apply state contract law. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007).

24. The subject Agreement contains an Illinois choice of law provision. See Exhibit B, ¶ 14. Under Illinois law, an agreement is binding and enforceable where there

has been an offer, an acceptance, and a meeting of the minds as to all material terms. *Seko Worldwide, LLC v. Four Soft Ltd.*, 503 F. Supp. 2d 1059, 1060-61 (N.D. Ill. 2007) (discussing Illinois law). Under Illinois law, "[f]or a contract to be enforceable, the essential terms of the contract must be definite and certain," and the contract "must include a meeting of the minds or mutual assent as to the terms of the contract." *Quinlan v. Stouffe,* 355 Ill. App. 3d 830, 837-38, 823 N.E.2d 597, 291 Ill. Dec. 305 (2005) (quotation marks omitted). *See also, Pritchett v. Asbestos Claims Mgmt. Corp.,* 332 Ill.App.3d 890, 896, 773 N.E.2d 1277, 1282, 266 Ill. Dec. 207 (5th Dist. 2002) (opinion that there must be an offer and acceptance that evidence a meeting of the minds reflecting an understanding "so definite with respect to its material terms that the promises and performances to be rendered by each party are reasonably certain").

25. Since settlement agreements are viewed as contracts where certain circumstances are met, courts apply ordinary contract construction principles determining the bounds of the settlement agreement. *U.S. v. Rand Motors*, 305 F.3d 770, 774 (7th Cir, 2002). Courts must ascertain the parties' intent by construing the settlement agreement according to the plain and obvious meaning of its terms. *See Eichengreen v. Rollins, Inc.*, 325 Ill.App.3d 517, 521, 259 Ill.Dec. 89, 757 N.E.2d 952, 956 (2001).

26. "Illinois follows the objective theory of intent whereby the written records of the parties' actions—rather than their subjective mental processes—drive the inquiry." *Beverly v. Abbott Labs.*, 817 F.3d 328, 333 (7th Cir. 2016). As Judge Shadur eloquently stated:

> As the elemental contract law taught in *1 Williston on Contracts* § 5:8 (Richard Lord, ed., 4th ed. 2006) puts it, "[o]nce an offer has been duly accepted, it is fundamental that revocation of the offer is no longer possible" (see also *Paramount Pictures Distrib. Corp. v. Gehring,* 283 Ill.App. 581, 589 (1st Dist. 1936)).

9

*Maxey v. Monahan*, 478 F. Supp. 2d 1044, 1050 (N.D. Ill. 2007).

### IV. Argument in Support of Motion to Enforce the Agreement

27. As discussed above and summarized below, the parties agreed to all of the language set forth on the face of the Agreement. In particular, Plaintiff and his counsel signed the Agreement. Defendant (for no good reason) has refused to execute the Agreement and has otherwise refused to comply with the terms of the Agreement.

28. Plaintiff's counsel signed the Agreement in his capacity as counsel for Plaintiff solely in relation to Paragraph 12 of the Agreement which relates Plaintiff counsel's representation of a yet unnamed couple as of January 8, 2021, and states in full:

> PLAINTIFF's attorney, James C. Vlahakis, agrees that as of January 29, 2021, he has not been retained by any individuals or entities, other than PLAINTIFF, and the husband and wife he first disclosed to MCM on January 8, 2021, that have or may have any potential claims, grievances, or causes of actions for violations of Section 1692f(8) of the FDCPA against MCM similar to the Section 1692f(8) claims asserted in the Lawsuit and resolved by this Agreement. Nothing in this paragraph shall be construed as a restriction of PLAINTIFF's attorney's right to practice in contravention of any applicable rules governing professional conduct.

29. Paragraph 15 of the Agreement provides that "[t]his Agreement sets forth the entire understanding and agreement among the Parties with respect to the subject matter hereof and supersedes any prior or contemporaneous oral and/or written agreements or representations." See Exhibit B, ¶ 15.

30. Paragraph 16 of the Agreement provides that "[t]his Agreement may not be altered or amended in any of its provisions except by the mutual written agreement of the parties." See Exhibit B, ¶ 16.

31. The transmission of Plaintiff's signature page to counsel for MCM is specifically allowed by Paragraph 19 of the Agreement which provides that "[t]his Agreement may be executed in counterparts and/or by facsimile or DocuSign signatures

with the same force and effect as if executed in one complete document with the original signature of all parties. See Exhibit B, ¶ 19.

32. For not good reason, MCM and its counsel have stubbornly refused to sign the Agreement and have otherwise refused to provide any of promised relief set forth by the confidential terms of the Agreement that have been redacted.

### V. MCM and its Counsel Have Violated 28 U.S.C. § 1927

33. MCM and its counsel have acted in bad faith and in an unreasonable and/or vexatious manner, in contravention of 28 U.S.C. § 1927 which provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

34. The term "vexatious" means subjective *or* objective bad faith. *Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184 (7th Cir. 1992) (citing *Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir. 1987) (noting that "intentional ill will or reckless conduct constitutes vexatious conduct")). Sanctions are justified where an attorney or a litigant stakes out a position "without a plausible legal or factual basis and lacking in justification[.]" *Pac. Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 119 (7th Cir. 1994). Here, both MCM and its counsel has defied Judge Kim's proposed signature "exchange" without a plausible legal or factual basis for refusing to sign the Agreement.

35. Sanctions are also justified where an attorney "pursue[s] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989). Here, MCM's counsel has defied Judge Kim's proposed signature "exchange" and has otherwise refused to sign the Agreement without any justification.

11

36. Alternatively, this Honorable Court has the inherent power to sanction MCM and its counsel even in the absence of a violation of 28 U.S.C. § 1927. *See, e.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 49, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) ("[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct."). As this Court has recognized, "[t]he Seventh Circuit, while not mandating any specific test, has suggested that when determining the appropriate sanction, a court should consider the following three factors: prejudice to the [party seeking sanctions], prejudice to the judicial system, and deterrence and punishment." *Fuery v. City of Chicago,* 2016 U.S. Dist. LEXIS 135086, *5-*6 (N.D. Ill. Sept. 29, 2016) (citing *Schilling v. Walworth Cty. Park & Planning Comm'n,* 805 F.2d 272, 275 (7th Cir. 1986)).

37. Here, Plaintiff simply wants MCM to sign the Agreement that was negotiated by its counsel. Since MCM and its counsel have refused to do so, MCM and its counsel should face sanctions in light of the harm caused to Plaintiff through has been required to expend fees researching and preparing this motion, prejudice to the judicial system where counsel for MCM (and presumably MCM) thumbed their noses at Judge Kim's proposed "exchange" (which resulted in Judge Kim terminating his referral) and overall deterrence and punishment to prevent MCM and its counsel for acting in such a caviler manner in the future.

38. To be fair, is counsel for MCM has acted unilaterally by refusing to abide by Judge Kim's proposed "exchange" and by not asking or counseling MCM to not sign the Agreement, MCM's counsel may need to suffer the consequence of its stubborn and misguided advise. At the same time, MCM may not be aware of that its counsel is doing. If that's the case, sanctions should apply solely to MCM's counsel.

WHEREFORE, for the reasons set forth above, Plaintiff NEAL PRESTON, respectfully requests that this Honorable Court order MCM to immediately sign the Agreement and award Mr. Preston reasonable attorney's spent in his counsel's attempts to cause MCM to sign the Agreement, including all attorney's spent on preparing this Motion to Enforce and arguing this Motion should the Court desire to hear oral argument.

/s/ *James Vlahakis*
Counsel for Plaintiff Neal Preston
SULAIMAN LAW GROUP, LTD.
2500 South Highland Ave., Suite 200
Lombard, IL 60148
630-581-5456
Email: jvlahakis@sulaimanlaw.com